BEECH CREEK RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4035. Promulgated May 24, 1945.

*Leo Manville, Esq.*, for the petitioner.
*Thos. H. Lewis, Jr., Esq.*, for the respondent.

138

OPINION.

DISNEY, *Judge*: The petitioner contends that the abandonment of railroad in 1940 constituted a deductible loss to it. There appears to be no difference between the parties as to the amount of the loss, if there was one, or as to the year incurred. The respondent, however, in substance argues that no loss was incurred by the petitioner for several reasons: First, that the petitioner did not release the lessee from its duty of surrendering the railroad at the end of the lease in the same condition as at the beginning, and that, therefore, it is entitled to equivalent property at the end of the lease, and has taken no loss; that if the petitioner did release the lessee from its

obligation to replace the abandoned property and surrender the equivalent, such release would be either a gift or a cost of the income which continues to be paid as to the abandoned property; that if petitioner did sustain a loss in the taxable year, it was too infinitesimal to be taken into account for the purposes of tax computation; and that the lease requires the surrender of the railroad, together with extensions, improvements, and betterments added at the lessee's cost, in good order and condition, so that it can not be known before the end of the lease whether the petitioner has taken a loss.

The substance of the petitioner's contention is that it abandoned the 1.97 miles of railroad; that the lessee was not required to provide other property in lieu thereof under the lease, or otherwise compensate the lessor therefor; and that therefore a loss was sustained. Petitioner relies primarily upon *Terre Haute Electric Co.* v. *Commissioner*, 96 Fed. (2d) 383. Therein the petitioner owned city and interurban traction lines, and other property, subject to a lease of 999 years to another company. The lessee was the owner of all of petitioner's outstanding common stock, except qualifying shares. Rentals under the lease consisted of dividends payable upon the lessor's preferred and common stock. In the taxable year two interurban lines were abandoned. One of the questions involved in the case was whether there was loss by virtue of such abandonment. The court, on that point, said:

We are unable to see any reason, however, why the contracting parties could not cancel a lease of this character, or any other character for that matter, and relieve themselves of the obligations incurred thereby, provided, of course, it was not to the injury of the third parties. Here, apparently, the parties to the lease in 1931, agreed that two of the lines in question might be abandoned, and, by proper state authority, were directed to be abandoned. Under such circumstances, how can it be said that the lessor is protected from the loss thus sustained? Certainly, thereafter, the lessee would be under no obligation to restore the abandoned property. It seems clear to us that petitioner sustained a deductible loss for the year 1931, on account of the two interurban railways abandoned that year. * * *

In that case two entire lines of interurban railway were abandoned. Nothing indicates that this did not diminish the lessor's rentals (here they were not diminished), and the court obviously came to the conclusion that the lessor's action relieved the lessee of all obligations with respect to the abandoned lines. Here we can not come to the same conclusion. The petitioner joined in the application for abandonment of a small portion of railroad under the terms of the lease requiring it to do so, for therein the lessor agreed to do all acts to enable the lessee to enjoy and exercise its rights "in respect to the use, management, maintenance, renewal, extension, alteration or improvements of the premises"—and in so doing, was saved harmless against all loss. The quoted expression logically

covers abandonment of a small fraction of the line. We see, therefore, in the petitioner's joinder in the application no such release of obligations as the court discerned in the *Terre Haute* case. Indeed, as just noted, we find here the very protection from loss which the court could not there find. In our opinion, by so joining in abandonment proceedings, under such circumstances, the petitioner did not deprive itself of its rights at the end of the long term lease to receive the property in the same good order and condition as at the date of the lease. But prior to that time, we see no change in the petitioner's position as to profit or loss. Then, and not until then, can the petitioner know whether it has been deprived of anything by the abandonment in 1940. Perhaps at the end of the lease the railroad will be operating, in the same good order and condition as in 1890, the small portion of road here involved.

This feature distinguishes *Commissioner* v. *Providence, Warren & Bristol R. Co.*, 74 Fed. (2d) 714, and, following and controlled by it, *Mississippi River & Bonne Terre Railway*, 39 B. T. A. 995 (1003), for in those cases property was sold under a definite contractual provision that all the lessor could ever receive was the proceeds of the sale, and, as expressed in the former case, "the only obligation of the assignee was to account to the respondent [lessor] for that," i. e., the sale price. Patently, the lessor's rights were definitely and permanently determined—while here the obligation set forth in the lease continued. The clauses construed in the two cases just noted are essentially the same as section twelfth of the lease here involved, providing for sale of real estate, application of proceeds on lessor's obligations, and diminution of rental, and the cases might bear upon this one if we were here dealing with section twelfth; but this case has nothing to do with that section. In our opinion, the petitioner has shown no deductible loss in the taxable year.

We hold that the Commissioner did not err in disallowing the deduction for loss. It follows that the $9,625.29 rent income (being income and income defense taxes, computed on the amount deducted as loss by petitioner) was properly added by the Commissioner to petitioner's income.

*Decision will be entered for the respondent.*